***********
Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Donovan and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. The dates of the alleged injuries which are the subject of this claim are April 17, 2009, June 12, 2009, and July 8, 2009.
2. On such dates, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On such dates, the employer-employee relationship existed between plaintiff and defendant-employer.
4. On such dates, defendant-employer employed three or more employees.
5. Defendant-employer is insured by Liberty Mutual Insurance Company.
6. Subsequent to the hearing, the parties stipulated that plaintiff's compensation rate is the maximum for 2009, $816.00 per week.
7. Defendants denied plaintiff's claims.
 ***********
The following were submitted to the Deputy Commissioner as:
 EXHIBITS
1. Stipulated Exhibit #1: Medical records, I.C. Forms (pgs. 1-108).
2. Stipulated Exhibit #1-Part 2: Submitted to Deputy Commissioner post-hearing, medical records, I.C. Forms, discovery (pgs. 109-202).
3. Deposition: Dr. Jeffrey A. Baker
 ***********
As set forth in the Pre-Trial Agreement and Deputy Commissioner Phillips' September 20, 2010 Opinion and Award, the Full Commission addresses the following:
 ISSUES *Page 3 
1. Whether plaintiff suffered a compensable injury by accident or specific traumatic incident on April 17, 2009, June 12, 2009, and/or July 8, 2009?
2. If so, to what benefits is plaintiff entitled?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-three (43) years old and had completed the 11th grade. Plaintiff's work history primarily consists of employment with construction companies. His primary occupation has been industrial crane maintenance. He began his employment with defendant-employer on July 12, 2004.
I.C. NO. W33516
2. On April 17, 2009, plaintiff was working in Elleville, Georgia, assigned to repair a large crane that was no longer operational. The crane to be repaired was built in 1974 and was the oldest and largest crane plaintiff had ever worked on. Plaintiff was notified by the manufacturer of the crane that the type of repairs he was attempting were not usually performed in the field. The size and age of the crane made repair unusually difficult.
3. Plaintiff attempted to disassemble the crane. In so doing, he pulled on an independent swing shaft on the crane which had gotten stuck due to rust. Plaintiff felt pain in his left shoulder, which he maintains he reported to his supervisor, Ryan Lowder, on that date. Mr. Lowder corroborated that he knew of plaintiff's shoulder pain in April 2009. Plaintiff believed that he had suffered a muscle pull and continued to attempt to work for the next few days. *Page 4 
4. On April 21, 2009, plaintiff presented to Dr. Harold Holloway, a local physician in Georgia. Plaintiff gave a history of having persistent left shoulder pain since April 17, 2009. Plaintiff noted that the pain was keeping him awake. He was instructed to ice his shoulder and was prescribed medications.
5. Plaintiff returned to Dr. Holloway on April 27, 2009, with complaints that his shoulder was not improving and the medication was not helping the pain. No x-ray or MRI was taken of plaintiff's shoulder and he was diagnosed with bursitis. Plaintiff received a shot and continued to take medications. He reported to Mr. Lowder that he had bursitis and continued to work.
I.C. NO. W33519
6. On June 12, 2009, plaintiff was still working on the crane in Georgia. Plaintiff was using a metal bar to help leverage wheel tracks back onto the crane when he felt a ripping sensation and significant instant pain in his left shoulder. Plaintiff maintains that he reported the injury to Mr. Lowder and requested to see a physician in his home town of Charlotte, North Carolina. However, Mr. Lowder claims he was on vacation in June 2009 and did not receive notice of the injury. Plaintiff returned to Charlotte from Georgia approximately one week later.
7. Mr. Cedric Oakes, a co-worker of plaintiff's and an employee of defendant-employer for approximately sixteen (16) years, worked with plaintiff in Georgia on the crane in question and remembered the occurrences of both the injury of April 17, 2009, and of June 12, 2009. Mr. Oakes had never heard plaintiff complain of shoulder pain prior to those dates of injury.
8. On June 22, 2009, plaintiff presented to Melissa Paris, a certified physicians' assistant for plaintiff's family physician, Dr. Bradley S. Chotiner. Plaintiff gave a history of *Page 5 
injuring his shoulder while working on a crane in Georgia about two months previously, but indicated "no known injury." He further reported that the previous week he was "pulling on tracks" and felt a sharp pain in his shoulder. The pain had been worsening and increased "with supination and pronation." Plaintiff stated that he had previously been seen by a doctor in Georgia and was told that he had bursitis, and had been taking medication for the pain. An MRI of plaintiff's left shoulder was ordered.
9. The MRI was performed on June 29, 2009, and showed a moderate grade insertional supraspinatus and infraspinatus tendiopathy, a moderate grade partial thickness intrasubstance tear at the infraspinatus myotendinous junction involving approximately 40% thickness, a posterior labral laceration with associated paralabral cyst, and mild subdeltoid bursitis. The conditions were described as degenerative type changes, with no acute fracture or dislocation.
I.C. NO. W39396
10. On July 8, 2009, plaintiff was in the Wilmington, North Carolina area on assignment to fix another crane. Plaintiff was operating a company truck when he was struck by a motorist who was fleeing police. The accident was reported to defendant-employer from the truck radio at the scene of the accident. Plaintiff was transferred to New Hanover Regional Medical Center where he reported bilateral shoulder pain and neck pain. Plaintiff requested a drug screen as required by defendant-employer, was prescribed medication, and released.
11. On July 9, 2009, plaintiff presented to orthopedic surgeon Dr. Jeffrey Baker at Carolina Spine and Hand Center. Dr. Baker's initial note concerning plaintiff's left shoulder indicates that plaintiff's osteoarthritic type changes were a pre-existing condition. However, Dr. Baker opined that plaintiff had suffered an exacerbation of those conditions as a result of the *Page 6 
work-place injuries described by plaintiff. Plaintiff did not report the car accident of the previous day to Dr. Baker. On October 6, 2009, Dr. Baker performed left shoulder arthroscopy on plaintiff. Thereafter, plaintiff completed a course physical therapy. Plaintiff has not returned to work.
12. Dr. Baker noted that plaintiff's condition was degenerative in nature and was "not something that would happen in just a couple month's period of time." During surgery, he discovered that the suspected acute partial rotator cuff tear was in fact "just the fraying of his rotator cuff, which kind of goes along with his degenerative changes."
13. Dr. Baker opined that while plaintiff's condition was degenerative and had occurred over an undeterminable period of time, the heavy nature of plaintiff's job duties exacerbated plaintiff's pre-existing conditions and the resulting pain constituted the "acute change" in plaintiff's condition.
14. Dr. Baker further opined that plaintiff could not return to his former employment. Dr. Baker recommends a Functional Capacity Evaluation for plaintiff, but opined that plaintiff's lifting limit would be between twenty-five (25) to thirty (30) pounds occasionally, and "constant lifting probably would be a lot less than that." He also noted that while the next step for plaintiff would be a shoulder replacement, due to his relatively young age, it was not currently recommended. The record does not reflect that plaintiff has received a rating for his left shoulder.
15. Plaintiff's average weekly wage at the time of these injuries was sufficient to yield the maximum compensation rate for 2009 of $816.00 per week.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following: *Page 7 
 CONCLUSIONS OF LAW
I.C. NO. W33516
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment on April 17, 2009. N.C. Gen. Stat. § 97-2(6).
2. An accident, as the word is used in the Act, has been defined as "an unlooked for and untoward event which is not expected or designed by the person who suffers the injury." Ferreyra v.Cumberland Cty.,175 N.C. App. 581, 583, 623 S.E.2d 825, 827 (2006).
3. The greater weight of evidence in the instant case shows that the crane plaintiff was working on was the oldest in operation for defendant-employer, was unusually rusted and in disrepair, and was an unusually large crane. Further, the rusted condition caused plaintiff to exert an unusual amount of force in attempting to dislodge the frozen swing shaft. The Full Commission concludes as a matter of law that there were sufficient unusual and unlooked for circumstances involved in the April 17, 2009 incident to define the incident as an injury by accident under the Act. Id.
4. As a result of this injury, plaintiff suffered an exacerbation of a pre-existing, non-disabling, condition that ultimately required surgery and resulted in the subsequent temporary total disability from employment. Further, the greater weight of the evidence shows that plaintiff has no work experience beyond the type of job duties he is now restricted from performing and has received no training in any other viable occupation. Accordingly, plaintiff is entitled to temporary total disability compensation in the amount of $816.00 per week beginning on October 6, 2009, and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure, *Page 8 
or lessen the period of disability, including the surgery of October 6, 2009, subject to the statute of limitations prescribed in N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-2(19).
I.C. NO. W33519
6. The greater weight of the evidence of record shows that plaintiff suffered a separate injury by accident arising out of and in the course of his employment with defendant-employer on June 12, 2009. However, this injury by accident did not result in a separate injury to plaintiff, but continued the exacerbation of his pre-existing, non-disabling, condition initiated by the April 17, 2009 injury by accident. Plaintiff did not suffer a rotator cuff tear in the June 12, 2009 incident, and the medical records do not reflect a significant change in plaintiff's condition subsequent to the April 17, 2009 incident. Accordingly, plaintiff is not entitled to additional indemnity compensation for the June 12, 2009 incident. Plaintiff is entitled to the continued medical treatment required to provide relief, effect a cure, or lessen the period of disability as stated above. N.C. Gen. Stat. §§ 97-2(19); 97-25.
I.C. NO. W39396
7. Plaintiff suffered an injury by accident on July 8, 2009, when he was involved in an automobile accident while in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
8. The evidence of record fails to show that plaintiff suffered any compensable injury as a result of that accident, or that he missed any time from work as a result of the incident. It appears from the record that the incident was insignificant enough that plaintiff did not even mention it to his treating physician the day after the accident. Accordingly, plaintiff is not eligible for additional benefits for this work-related accident, beyond the medical treatment he received immediately following the accident. N.C. Gen. Stat. § 97-2(19). *Page 9 
9. As plaintiff has not received a permanent partial disability rating to his shoulder, this Opinion does not address this issue. However, in the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing from the Commission to resolve this matter.
10. As plaintiff has not received any vocational training or had a functional capacity evaluation, this Opinion does not address the issue of plaintiff's long-term disability. The Full Commission concludes as a matter of law that plaintiff should undergo a functional capacity evaluation and, if the results indicate an inability to perform the type of employment plaintiff has previously held, that he receive vocational rehabilitation assistance. Plaintiff remains eligible for indemnity benefits pending the outcome of these programs and the issue of continuing disability compensation may be revisited subsequently.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Subject to the attorney's fee provided below, defendants shall pay temporary total disability compensation to plaintiff at the rate of $816.00 per week for the period beginning on October 6, 2009, and continuing until further Order of the Commission. Those amounts which have accrued shall be paid in a lump sum.
2. As a reasonable attorney's fee, defendants shall pay twenty-five percent (25%) of the lump sum for past due temporary total disability compensation in paragraph one (1) to plaintiff's attorney, and thereafter to pay every fourth (4th) check for ongoing temporary total disability compensation to plaintiff's attorney. *Page 10 
3. Plaintiff shall undergo a functional capacity evaluation at the earliest opportunity. Dr. Baker or his designee shall perform the evaluation. Defendants shall pay for the evaluation.
4. Defendants shall pay medical expenses incurred or to be incurred when medical bills have been submitted according to established Industrial Commission procedures.
5. Defendants shall provide vocational rehabilitation assistance to plaintiff in accordance with the recommendations of Dr. Baker and the results of the functional capacity evaluation.
6. Defendants shall pay the costs.
This the 30th day of March, 2011.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 CONCURRING: S/_____________ STACI T. MEYER COMMISSIONER
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER *Page 1